# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

LINDA SINKS,

          Plaintiff,

   vs.

COUNTY OF FRESNO, et al.,

          Defendants.

                                      /

CASE NO. CV-F-11-1990-LJO-SKO

**ORDER ON DEFENDANT'S MOTION TO DISMISS** (Doc. 9)

## INTRODUCTION

This action arises from a physical altercation that allegedly occurred between plaintiff, Linda Sinks ("Ms. Sinks"), and defendants, George Ozburn ("Mr. Ozburn") and Nicole Ozburn ("Mrs. Ozburn") on July 24, 2011. Mr. Ozburn is employed by the County of Fresno Sheriff's Department as a law enforcement officer. Ms. Sinks alleges that Mr. Ozburn's actions were within the scope of his employment thus, the County of Fresno ("the County") is liable for his wrongful acts.[1] The County seeks to dismiss Ms. Sinks' first amended complaint without leave to amend because she has failed to state a *Monell* claim and any amendment would be futile. For the reasons discussed below, this Court GRANTS WITH LEAVE TO AMEND the County's motion to dismiss Ms. Sinks' federal claims, DECLINES TO ADDRESS the remaining state law claims, ORDERS Ms. Sinks to file a second amended complaint, and ORDERS Mr. and Mrs. Ozburn to serve and file response papers to the second amended complaint, thereby adjusting their current briefing schedule.

---

[1] Ms. Sinks also commences this action against Does 1 through 10. Mr. Ozburn, Mrs. Ozburn, the County, and Does 1 through 10 will be referred to collectively as "defendants."

1

# BACKGROUND

## Facts[2]

Ms. Sinks owns the Hungry Hut, a fast food restaurant. (Docket #6, ¶ 13-14). Service to customers at the outside counter is through a sliding glass window. (Docket #6, ¶ 13). On Sunday, July 24, 2011, Mr. Ozburn and his wife, Mrs. Ozburn, ordered lunch at the outside counter from Angelica, one of Ms. Sinks' female employees. (Docket #6, ¶ 15). Mrs. Ozburn was not satisfied with her order so Mr. Ozburn yelled at Angelica. (Docket #6, ¶ 15). Ms. Sinks, who was in the back of the restaurant, heard Angelica yell, "Get your hands off me!" (Docket #6, ¶ 15). She then heard Mr. Ozburn yell, "Fucking bitch!" (Docket #6, ¶ 15).

When Ms. Sinks approached the sliding glass window, Mr. Ozburn was shaking with anger and stated, "I am a cop." (Docket #6, ¶ 16). Ms. Sinks tried to close the sliding glass window but Mr. Ozburn propped it open and stated, "You're not closing this window on me." (Docket #6, ¶ 16). When Ms. Sinks reached through the window, Mr. Ozburn held her arm and Mrs. Ozburn hit her. (Docket #6, ¶ 16). Mr. Ozburn tore up his burger, threw it at Ms. Sinks through the window, and pushed the sliding glass window off its track. (Docket #6, ¶ 17). Mr. Ozburn kept repeating, "I am a cop, I can do anything I want and I won't get in trouble for it." (Docket #6, ¶ 17). When Ms. Sinks asked to see Mr. Ozburn's badge, he refused to show it. (Docket #6, ¶ 17). Ms. Sinks then went outside and told the Ozburns to leave. (Docket #6, ¶ 18). Mr. Ozburn refused and stated, "I am a cop, I don't have to." (Docket #6, ¶ 18). Mr. Ozburn then chest-butted Ms. Sinks and punched her in the chest, which resulted in a large bruise. (Docket #6, ¶ 19). Ms. Sinks also developed bruises on her arms from the incident. (Docket #6, ¶ 19). Employees at the Hungry Hut called 911 and officers from the Fresno County Sheriff's Department arrived. (Docket #6, ¶ 20). The officers were unwilling to arrest Mr. Ozburn so Ms. Sinks made a citizen's arrest. (Docket #6, ¶ 25).

Ms. Sinks further alleges that the Fresno County Sheriff's Department is covering up the incident. (Docket #6, ¶ 25). On Tuesday, July 26, 2011, Ms. Sinks went to the Fresno County Sheriff's Station for an interview. (Docket #6, ¶ 22). Detective Newlick told Ms. Sinks, "Your injuries aren't

---

[2] The background facts are derived from the complaint. This Court accepts these allegations as true for purposes of the motion. *See Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

that bad, you don't need to go to the hospital." (Docket #6, ¶ 22). Detectives also told Ms. Sinks, "It's your word against his." (Docket #6, ¶ 23). Another detective told Ms. Sinks that the bruise on her chest was "self-inflicted." (Docket #6, ¶ 23). In addition, the Fresno County Sheriff's Department will not allow Ms. Sinks to access the 11 witness statements that they previously told her were obtained at the scene of the incident. (Docket #6, ¶ 26). The Sheriff's Department now says that no such witness statements exist. (Docket #6, ¶ 26). Ms. Sinks also alleges that the Hungry Hut and its employees are being harassed because the Fresno County Health Department conducts frequent inspections of the restaurant. (Docket #6, ¶ 27). A law enforcement officer informed Ms. Sinks that the County is "one big family" and that "every agency imaginable will be inspecting your business." (Docket #6, ¶ 27).

## Procedural History

On November 16, 2011, Ms. Sinks commenced the instant action in Fresno County Superior Court. (Docket #1, p. 5). On November 28, 2011, the County removed the action to this Court. (Docket #1). On December 2, 2011, Ms. Sinks filed an amended complaint. (Docket #6). The amended complaint alleges seven claims for relief: (1) assault (against all defendants); (2) battery (against all defendants); (3) negligence (against all defendants); (4) intentional infliction of emotional distress (against Mr. Ozburn and the County); (5) violation of California's Bane Act, pursuant to Cal. Civ. Code § 52.1 (against all defendants); (6) gender violence, in violation of Cal. Civ. Code § 52.4 (against Mr. Ozburn and the County); and (7) gender discrimination, pursuant to 42 U.S.C. § 1983 ("section 1983") (against Mr. Ozburn and the County).

On December 6, 2011, the County filed a motion to dismiss Ms. Sinks' amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6). (Docket #9). Ms. Sinks opposed the motion. (Docket #14). On January 3, 2012, Mr. and Mrs. Ozburn were granted an extension of time in which to file their answer to the complaint. (Docket #13). The January 19, 2012, hearing or oral argument was vacated, pursuant to Local Rule 230(g). Having considered the parties' arguments and the relevant law, this Court issues this order.

## DISCUSSION

**I. Motion to Dismiss for Failure to State a Claim Standard**

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the

3

allegations set forth in the complaint. A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions...amount[ing] to nothing more than a 'formulaic recitation of the elements'...are not entitled to be assumed true." *Iqbal*, 129 S. Ct. at 1951. A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some

viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

With these standards in mind, this Court turns to the County's challenges to the allegations in Ms. Sinks' complaint.

**II. Ms. Sinks'** ***Monell*** **Claim**

The County advances three arguments why the claims against the County in Count Seven of the amended complaint should be dismissed for failure to state a *Monell* claim.  First, Mr. Ozburn's alleged wrongful acts were not performed under color of law.  Second, Ms. Sinks has failed to allege facts to show that she was deprived of a constitutional right.  Finally, Ms. Sinks has failed to allege an unconstitutional policy, practice, or custom on the part of the County that is in any way connected to Mr. Ozburn's actions.

**A. Alleged Wrongful Acts Were Not Performed Under Color of Law**

The County contends that Ms. Sinks has failed to state a *Monell* claim because Mr. Ozburn's alleged wrongful acts were not performed under color of law.

"To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 836 (9th Cir. 1996). Municipalities are included among those persons to whom section 1983 applies. *Monell v. Dep't of Soc. Servs. of New York City*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "[W]hether a[n] . . . officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006) (internal quotation marks and citations omitted). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State.  Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West*

1  *v. Atkins*, 487 U.S. 42, 49-50 (1988).

2        The Ninth Circuit has held that there are "three critical requirements" that must be satisfied when determining if an individual who invokes his law enforcement status is acting under the color of state law. *Anderson*, 451 F.3d at 1068.

> First, the defendant's action must have been "performed while the officer is acting, purporting, or pretending to act in the performance of his or her official duties." [*McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000)]. Second, the officer's pretense of acting in the performance of his duties must have had the purpose and effect of influencing the behavior of others. *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 839-40 (9th Cir. 1996) (finding no color of state law because the victim had not opened the door based on defendant's status as a police officer). Third, the challenged conduct must be "related in some meaningful way either to the officer's governmental status or to the performance of his duties." [*Martinez v. Colon*, 54 F.3d 980, 987 (1st Cir. 1995)].

*Id*. at 1068-69. "Officers who engage in confrontations for personal reasons unrelated to law enforcement, and do not purport [] or pretend [] to be officers, do not act under color of law." *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998) (internal quotation marks and citations omitted). Likewise, "acts of officers in the ambit of their personal pursuits are plainly excluded . . . [from] the words 'under color of any law.'" *Screws v. United States*, 325 U.S. 91, 111 (1945).

        Mr. Ozburn's alleged wrongful acts were not performed under color of law. To begin with, Mr. Ozburn was not "acting, purporting, or pretending to act in the performance of his . . .official duties." *McDade*, 223 F.3d at 1140. Mr. Ozburn was at the Hungry Hut restaurant to have lunch with his wife. While waiting for their order a confrontation ensued between the duo and Hungry Hut employees. Although Mr. Ozburn identified himself as a police officer during the confrontation,[3] this alone did not transform his private acts into acts under color of state law. *See Van Ort*, 92 F.3d at 839 ("Merely because a police officer is recognized as an individual employed as a police officer does not alone transform private acts into acts under color of state law."); *see also Cook v. Morrow*, No. C06-04337, 2007 WL 3022607, *6-7 (N.D. Cal. Oct. 12, 2007) (officer's single comment that he was from the

---

[3] During the confrontation, Mr. Ozburn continually stated that he was a cop and that he could do whatever he wanted and would not get in trouble for it because he was a cop. When asked to leave, Mr. Ozburn stated, "I am a cop, I don't have to."

6

Oakland Police Department was not enough to show that the officer was "acting, purporting, or pretending to act in the performance of his official duties").

Moreover, even assuming that Mr. Ozburn was "purporting or pretending to act in the performance of his . . . official duties," *McDade*, 223 F.3d at 1140, the effect of his behavior did not influence the behavior of others. Although Mr. Ozburn continually stated that he was a police officer, this proclamation did not prevent employees at the Hungry Hut from calling 911 to summon the Fresno County Sheriff's Department. Likewise, it did not prevent Ms. Sinks from attempting to close the sliding glass window on Mr. Ozburn, telling him to leave, or making a citizen's arrest on him. Thus, even assuming Mr. Ozburn was purporting to act in the performance of his official duties, his behavior did not influence the behavior of others. *See Van Ort*, 92 F.3d at 839-40 (holding that officer's acts were not under color of law because the officer "exerted no meaningful, physical control over [the victim] on the basis of his status as a law enforcement officer"); *cf. Anderson*, 451 F.3d at 1069 (holding that off-duty and out of uniform police officer's act of telling people that he was a cop and to stay back, which they did, was acting under color of state law because the officer's statements had the effect of influencing the behavior of others).

Finally, Mr. Ozburn's alleged wrongful conduct was not related to his governmental status or to the performance of his duties. Ms. Sinks alleges that Mr. Ozburn held her arm while Mrs. Ozburn hit her and that Mr. Ozburn pushed the sliding glass window off the track, chest-butted Ms. Sinks, and punched her in the chest. This conduct is not related, much less *meaningfully* related, to Mr. Ozburn's governmental status as a police officer or to the performance of his duties. Instead, Mr. Ozburn was acting "in the ambit of his personal pursuits." *Screws*, 325 U.S. at 111. Because Mr. Ozburn was not acting under color of law, no derivative municipal liability can be imposed. *See Monell*, 436 U.S. at 691.[4] Plaintiff has suggested there may be additional facts relevant to this issue. For example, in her opposition, counsel indicates that the video of the incident shows all customers fleeing when Mr. Ozburn announced he was a police officer. (Docket #14, p. 5-6). This fact was not included in the amended

---

[4] Although Mr. Ozburn has not yet moved to dismiss, the reasoning set forth above also dooms the current iteration of Ms. Sinks' section 1983 claim against Mr. Ozburn, as his personal liability under section 1983 also requires action under the color of law.

7

complaint. The Court expresses no opinion as to whether these and/or any additional allegations will cure the defect in the amended complaint. However, plaintiff shall be afforded an opportunity to amend her complaint to add facts relevant to the color of law issue.

**B. Failure to Allege Facts to Show the Deprivation of a Constitutional Right**

Next, the County asserts that Ms. Sinks has failed to allege facts to show that she was deprived of a constitutional right because she has failed to state an Equal Protection Claim.[5] This Court agrees. Accordingly, even if Mr. Ozburn was acting under color of law, Ms. Sinks has failed to state a *Monell* claim because she has failed to allege facts to show that she was deprived of a constitutional right.

"The Equal Protection clause of the Fourteenth Amendment confers a federal constitutional right to be free from gender discrimination at the hands of governmental actors." *Lindsey v. Shalmy*, 29 F.3d 1382, 1385 (9th Cir. 1994) (internal quotation marks and citations omitted). A section 1983 plaintiff alleging an equal protection violation must prove that: (1) the defendants treated plaintiff differently from others similarly situated; (2) the unequal treatment was based on an impermissible classification; (3) the defendants acted with discriminatory intent in applying this classification; and (4) plaintiff suffered injury as a result of the discriminatory classification. *Moua v. City of Chico*, 324 F. Supp. 2d 1132, 1137 (E.D. Cal. 2004); *see Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998 (a section 1983 plaintiff alleging denial of equal protection "must show that the defendants acted with an intent or purpose to discriminate against plaintiff based on membership in a protected class."); *Van Pool v. City and County of San Francisco*, 752 F. Supp. 915, 927 (N.D. Cal. 1990) (section 1983 plaintiff must prove purposeful discrimination by demonstrating that he "receiv[ed] different treatment from that received by others similarly situated," and that the treatment complained of was under color of state law).

Ms. Sinks alleges that she was harassed, assaulted, and discriminated against by Mr. Ozburn because of her gender. She bases her claim on the allegation that Mr. Ozburn called one of her female employees a "fucking bitch" and then confronted and assaulted Ms. Sinks. She further alleges that other agents of the County of Fresno violated her Fourteenth Amendment rights by harassing her by

---

[5] The County also argues that Ms. Sinks has failed to state a Fourth Amendment and substantive due process claim. Because Ms. Sinks does not allege a Fourth Amendment or due process claim in her complaint nor address these issues in her opposition, the Court declines to address these issues.

8

performing frequent health inspections of the Hungry Hut and by covering up the incident that occurred with Mr. Ozburn. Accepting all of these allegations as true, Ms. Sinks fails to allege that she was treated differently from others similarly situated based on her gender. The complaint further lacks facts to show that defendants acted with the intent or purpose to discriminate against Ms. Sinks based on her gender. Accordingly, Ms. Sinks has failed to allege facts to show that she was deprived of a constitutional right which is required in order to state a *Monell* claim. *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (to impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff must first establish that "he possessed a constitutional right of which he was deprived").

It appears from the complaint that Ms. Sinks may also be alleging a section 1983 claim against the County for its agents' alleged "cover-up" of the incident.[6] (Docket #6, ¶ 75). Neither party addresses this issue in their briefs. Whether this claim is meant to allege a stand-alone constitutional violation or a claim that is derivative of plaintiff's gender discrimination/equal protection claim is unclear. Because the nature of the alleged violation is unclear, plaintiff's section 1983 claim cannot survive based on any alleged "cover up." Plaintiff must clarify the nature of this allegation in any amended pleading.

**C. Failure to Allege an Unconstitutional Policy, Practice, or Custom**

Finally, the County argues that Ms. Sinks has failed to state a *Monell* claim because she has failed to allege an unconstitutional policy, practice, or custom on the part of the County that is in any way connected to Mr. Ozburn's acts.

Municipalities are liable under section 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. In other words, a municipality may be liable under section 1983 if its deliberate policy caused the constitutional violation alleged. *Id*. at 694. A failure to train or supervise can amount to a "policy or custom" sufficient to

---

[6] Paragraph 25 of the amended complaint alleges that the Fresno County Sheriff's Department "covered up" the incident that occurred between Mr. Ozburn and Ms. Sinks. (Docket #6, ¶ 25). Ms. Sinks alleges that "the Sheriff's Department . . . violated [her] civil rights by failing to take action against Officer Ozburn, and also by preventing her from obtaining access to corroborating evidence, including the statements taken by the Fresno County Sheriff's Department officers at the time of the incident." (Docket #6, ¶ 25).

impose liability on the County. *City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989). In order to establish municipal liability based on a failure to train, Ms. Sinks must show that (1) she was deprived of a constitutional right; (2) the County had a training policy that amounts to deliberate indifference to the constitutional rights of the person with whom employees are likely to come into contact; and (3) her constitutional injury would have been avoided had the County properly trained those employees. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007).

Ms. Sinks alleges that she was deprived of her Fourteenth Amendment right to be free from gender discrimination by the wrongful acts of Mr. Ozburn and the subsequent "harassment and cover-up of the incident" by other agents of the County. (Docket #6, p. 11). She alleges generally that "the County failed to use due care in its training, supervision, and employment of defendant Ozburn." (Docket #6, ¶ 42). These allegations fall far short of *Twombly's* pleading requirement that a complaint must "contain either direct or inferential [factual] allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (internal quotation marks and citations omitted). Ms. Sinks has failed to allege any factual allegations, other than legal conclusions cast in the form of factual allegations, to support the existence of a policy or practice that would satisfy *Monell*. Nor does Ms. Sinks allege facts to suggest that her constitutional injury would have been avoided had the County properly trained Mr. Ozburn. *Blankenhorn*, 485 F.3d at 484. Accordingly, Ms. Sinks has failed to state a section 1983 claim against the County for the alleged wrongful acts of Mr. Ozburn.

**D. Leave to Amend**

The County argues that Ms. Sinks should not be granted leave to amend. Because this Court cannot say "that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficienc[ies]," *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986), this Court GRANTS Ms. Sinks leave to amend.

Accordingly, this Court GRANTS the County's motion to dismiss Ms. Sinks' section 1983 claim with leave to amend.

**III. Ms. Sinks' State Law Claims Against the County**

The County argues that Ms. Sinks cannot maintain her state law claims in Counts One through

Six because the alleged wrongful conduct was not performed in the course and scope of Mr. Ozburn's employment with the Sheriff's Department. The County further contends that it cannot be held liable for Ms. Sinks's negligence claims because there is no statute providing for such liability.

Where all federal claims are dismissed in an action containing both federal and state law claims, a federal court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367; *Notrica v. Board of Sup'rs of County of San Diego*, 925 F.2d 1211, 1213-14 (9th Cir. 1991); *see also Bryant v. Adventist Health System/West*, 289 F.3d 1162, 1169 (9th Cir. 2002). When a Court dismisses all claims over which it has original jurisdiction and declines to exercise supplemental jurisdiction over the state-law claims, the Court is not required to provide an explanation for its decision. *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001). Accordingly, this Court declines to exercise supplemental jurisdiction over Ms. Sinks' state law claims and will not address them at this time.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. GRANTS WITH LEAVE TO AMEND the County's motion to dismiss Ms. Sinks' Seventh Cause of Action;
2. DECLINES TO ADDRESS Causes of Action One through Six;
3. ORDERS Ms. Sinks to file and serve a second amended complaint within 21 days of the filing of this order to cure the identified deficiencies, consistent with her obligations under Federal Rule of Civil Procedure 11;
4. ORDERS the County to file and serve papers in response to the second amended complaint within 14 days after service of the second amended complaint; and
5. ORDERS defendants George and Nicole Ozburn to file and serve papers in response to the second amended complaint within 14 days after service of the second amended complaint, thereby adjusting the current briefing schedule.

Plaintiff needs to recognize that this Court is beyond busy. If the facts aren't there to amend, don't.

IT IS SO ORDERED.

**Dated:   January 20, 2012**                              **/s/ Lawrence J. O'Neill**

UNITED STATES DISTRICT JUDGE